Filed 3/15/24  P. v. Jah CA1/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DAVID MARTIN SHE JAH,<br><br>     Defendant and Appellant. | A166034<br><br>(Marin County<br>Super. Ct. No. SC206320A) |

Defendant David Martin She Jah appeals from the trial court's order suspending sentence and placing him on two years of supervised probation following his guilty plea to assault by means of force likely to produce great bodily injury (Pen Code,[1] § 245, subd. (a)(4)).  Jah's appointed appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), identifying no issues and requesting that this court review the record and determine whether any arguable issue exists on appeal.  Jah subsequently filed supplemental briefing on his own behalf.  Having reviewed the record and briefing, we affirm.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 10, 2019, the Marin County District Attorney filed an information alleging that, on or about September 26, 2018, Jah committed felony assault with a firearm (§ 245, subd. (a)(2); count 1); felony discharge of a firearm with gross negligence (§ 246.3; count 2); and felony carrying a concealed firearm when not the registered owner (§ 25400, subds. (a)(2) & (c)(6); count 3). Counts 1 and 2 were enhanced with allegations that Jah inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).

The charges were based on the following incident.[2] Around 10:30 p.m. on September 25, 2018, several Marin County deputy sheriffs responded to a report of shots fired in a parking lot near the 300 Drake Ave. area of Marin City. During their investigation, a witness reported that a Black male wearing a red hat, white shirt, and dark pants had fired a firearm with an extended magazine in the parking lot. The witness heard two sets of firing—a few rounds first, then about six more. The shooter then went to a black 1996 Lincoln, retrieved a bag, and left the area. At an infield showup, the witness was "100 percent sure" Jah was the shooter. The witness also observed another Black male in a blue hooded sweater fire rounds.

Deputies also learned that Henry W. had been taken to a local hospital with multiple gunshot wounds. When interviewed, Henry W. reported that he had been hanging out in the parking lot when he heard gunshots, saw other people start running, and ran to his sister's nearby apartment, where he noticed he was bleeding.

---

[2] Our summary of the facts underlying the charges in this matter is based on the transcript of the September 2019 preliminary hearing.

Deputies canvassed the parking lot for evidence, finding casings, a live round, and two vehicles with gunshot holes. They began securing the scene. While they were doing so, an individual identified as Jah approached Deputy Edmund Rudolph, stated the black Lincoln was his car, and asked if he could leave in it. Rudolph responded that it was a crime scene and obtained permission from Jah to pat him down. After Rudolph located two magazines in the pocket of Jah's peacoat, Jah was detained in handcuffs for further search. During this period, Jah twice stated, " 'It was self defense.' " The subsequent search of Jah, including a black bag he was wearing under his coat, disclosed a Fire Star semiautomatic pistol, a red hat, bullets, and a loaded magazine clip.

Deputy Sean Makyel subsequently interviewed Jah after he waived his *Miranda*[3] rights. According to Jah, he and some friends were hanging out in the parking lot on the night of the incident, drinking and smoking marijuana. He told several people in the area that he had two guns and warned them to stay away from his car. He also showed photos of the firearms. The guns were two .45-caliber semiautomatics, a Firestar and a Glock 30. The Firestar gun was registered to his father. Jah was seated in the rear seat of his car when an individual opened "the driver's side passenger door," pointed a gun at him, and demanded one of his guns. A second individual opened the front passenger door and grabbed the Glock 30 from under the passenger seat. He then opened the back passenger door and demanded the Firestar. Jah stated he refused, lunged at the second individual, exited, and fired a round into the ground in an attempt to scare the second individual off. Jah waved his gun around, telling everybody to get down. He then started chasing the first individual, firing nine rounds randomly in his direction. Jah reported there

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

were a lot of people in the parking lot at this time. Jah stated that he believed the first individual had a loaded gun, and he was " 'scared as fuck.' " But he also claimed that he only aimed at the first individual's lower torso to slow him down so he could question him regarding the whereabouts of the second individual who had stolen his Glock 30. After a brief conversation with the first individual, Jah went back to his car, reloaded his gun, grabbed a backpack, and then went looking for the second individual.

At the conclusion of the preliminary hearing, Jah was held to answer on all counts. On December 10, 2019, Jah waived formal arraignment on the information, pleaded not guilty, and denied all enhancements. On February 4, 2020, new counsel substituted in for the defense. In March 2020, defense counsel filed a motion for disclosure of the identity of confidential witnesses, which the court granted over opposition. Defense counsel also filed a motion under section 995, contesting the sufficiency of the evidence supporting the probable cause finding made at the preliminary hearing with respect to count 1, and a motion to suppress evidence. The section 995 motion was heard and denied in December 2020.

At a pretrial conference on February 4, 2021, defense counsel expressed a doubt as to Jah's competency to stand trial, and the proceedings were suspended. In April 2021, after receipt of a doctor's report, the court declared Jah not competent nor able to cooperate with counsel, ultimately ordering an outpatient treatment evaluation for restoration of competency. On July 15, 2021, the court committed Jah to Golden Gate CONREP for outpatient treatment/competency training. By August 27, 2021, the court had received a certificate of mental competence with respect to Jah from Golden Gate, found Jah's competency had been restored, and reinstated criminal proceedings.

Thereafter, the parties presented a negotiated resolution to the court. On November 19, 2021, the court discussed with Jah his constitutional rights and the possible consequences of his plea, and Jah submitted a written waiver of rights. Jah then pleaded guilty to an amended count 1 (assault with force likely to cause serious bodily injury pursuant to § 245, subd. (a)(4)), in return for a stipulated sentence of two years' formal probation, a maximum of 120 days in county jail, the possibility of reduction to a misdemeanor under section 17, subdivision (b) after 18 months of probation, and dismissal of the other counts and the enhancements. The court found Jah's plea with respect to count 1 to be knowing, intelligent, and voluntary. It dismissed the balance of the allegations.

At sentencing on January 13, 2022, the court suspended sentence and placed Jah on supervised probation for two years under numerous terms and conditions, including participation in therapy and 60 hours of community service. The court also imposed a 100-day jail sanction. The court declined to award conduct credits for the time Jah spent in outpatient treatment, but otherwise awarded 45 days for time served.[4] The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction fee (Gov. Code, § 70373). It additionally imposed but stayed a $300 parole revocation fine. (§ 1202.45, subd. (a).) Jah filed a timely notice of appeal with respect to postplea issues.

## DISCUSSION

As mentioned above, Jah appealed from the trial court's January 2022 sentencing order made after he pleaded guilty to assault by means of force

---

[4] Appellate counsel subsequently asked the trial court to correct Jah's presentence credits to award the conduct credits he was entitled to receive for his outpatient treatment, and the trial court did so.

likely to produce great bodily injury. We appointed counsel to represent Jah on appeal. Counsel filed a *Wende* brief raising no issues and requesting that we independently review the record. (*Wende, supra*, 25 Cal.3d at p. 441; see also *People v. Kelly* (2006) 40 Cal.4th 106, 109–110.) Jah was advised by his attorney of the opportunity to file a supplemental brief with this court, and he did so, raising a number of issues.

We have examined the entire record and are satisfied that Jah's attorney has complied with her responsibilities and that no arguable issue exists. We also conclude that Jah, himself, has raised no arguable issues meriting further review. Jah contends that counsel was ineffective for failing to raise the issue of his competency at the preliminary hearing stage, rendering his subsequent plea invalid. He also argues counsel was incompetent for failing to call witnesses who could have corroborated his self-defense claim and for failing to raise the self-defense issue in the section 995 motion. He states that the multiple shell casings found at the crime scene did not prove beyond a reasonable doubt that he was the shooter, and that the victim, Henry W.'s, long criminal record somehow shows that the responding officers were not truthful and that he, Jah, was acting in self-defense. Finally, noting his brother-in-law had been shot and killed during a robbery and arguing that he was set up to be robbed and had been provided involuntary intoxicants by someone he trusted, Jah claims that counsel was ineffective for failing to investigate his mental state at the time of the crime and present a mental health expert to opine that his response was due to posttraumatic stress disorder.

The fundamental flaw with respect to all of these arguments is that Jah waived his right to appeal anything other than possible sentencing error when he pleaded guilty in return for a suspended sentence. Thus, he cannot

6

now raise any of the issues he identifies.  Many of his assertions might have become relevant had he decided to go to trial and argue self-defense, but he chose a different path.  As to his overall competency to enter his guilty plea, after an extended colloquy in which Jah repeatedly sought clarification when he failed to understand something, the trial court found the plea was made knowingly, intelligently, and voluntarily.  At that time, Jah recently had been certified competent to proceed, and defense counsel did not re-raise any doubts as to his client's competency.  While Jah claims that the record makes clear that his comprehension was impaired as early as his first appearance, we have reviewed the entire record and find no such evidence.

## DISPOSITION

The judgment is affirmed.

CASTRO, J.*

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A166034
*People v. Jah*

---

\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8